**In re the MARRIAGE OF Barbara A. MILLER and Martin A. Miller.**

**Upon the Petition of Barbara A. Miller, Petitioner–Appellee,**

**And Concerning Martin A. Miller, Respondent–Appellant.**

**No. 90–652.**

Court of Appeals of Iowa.

Aug. 27, 1991.

Robert C. Oberbillig of the Human Service Campus, Des Moines, for appellant.

Tom Hyland of Hyland, Laden & Pearson, P.C., Des Moines, for appellee.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

This appeal concerns the economic aspects of a decree dissolving a long-term marriage. Respondent-appellant Martin A. Miller challenges the property, alimony and

child support awards made by the trial court. We affirm as modified.

Martin and petitioner-appellee Barbara A. Miller were married in 1971. They have three children. The oldest, who is nineteen, is seeking ways to complete her college education. The younger children are fourteen and eleven. In accordance with an agreement reached by the parties following mediation, Barbara was given physical care of the two younger children.

At the time of trial Martin was forty-five. He has a college degree and has been employed during the marriage first by the Des Moines school system and now by the City of Des Moines. His annual salary is $34,000. Barbara has a ninth grade education. She is employed by a cleaning service on a part-time basis. Her annual earnings have never exceeded $4,000.

The trial court divided the party's personal property, made an allocation of their debts, ordered Martin to pay Barbara rehabilitative alimony of $300 per month for thirty-six months, and child support of $337 per month per child. Martin was also ordered to maintain his current life insurance and maintain existing health and dental insurance on the children.

■ Martin first contends the trial court should not have awarded Barbara alimony. He complains the trial court should not have allowed her to amend her petition at time of trial to request alimony. Barbara's petition made a general request for support and equitable relief. The trial court was justified under the pleading in awarding alimony.

■ Martin also contends there was no evidence to support an alimony award. This was a long-term marriage. Barbara for a considerable period absented herself from the job market to assume substantial responsibility for the parties' three children. Barbara has a limited education. She has limited employment opportunities. During the course of the marriage, Martin has been employed outside the home. His earning capacity and earning potential is greater than Barbara's. Martin has made larger FICA contributions. He will have greater retirement benefits. We look to the presence or absence of social security benefits in analyzing the equitability of a property division. *See In re Marriage of Schissel*, 292 N.W.2d 421, 427 (Iowa 1980); *Locke v. Locke*, 263 N.W.2d 694, 696 (Iowa 1978). While the marriage lasted over ten years, and Barbara may have some rights to draw on Martin's benefits, they will be considerably less. *See* Missel, *Social Security Benefits and the Divorced Spouse*, Case & Com., Jan.-Feb. 1986 at 24. The award of $300 a month alimony for thirty-six months is equitable. *See generally In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989); *In re Marriage of Martin*, 436 N.W.2d 374, 377 (Iowa App.1988). It will not be disturbed on appeal.

Martin next complains that the property allocation was not equitable. The parties' assets without Martin's Iowa Public Employees Retirement (IPERS) totaled about $7,000. The parties had considerable debts, including a joint obligation for unpaid income taxes. The trial court allocated all the debts to Martin. The court also gave each party certain personal property and a motor vehicle. Martin's IPERS account was determined to be in the amount of $16,000. It was awarded to him. He also was given property valued at about $2,000. The trial court awarded to Barbara property determined to be valued at about $5,000. The trial court found the parties owe an income tax liability of between $1,500 and $2,500. The trial court then considered the property award and apportionment of debt supported an award to Barbara against Martin for $4,100, payable at $300 a month commencing November 1, 1993, with interest at 9 percent from the first of the month following the date of the entry of the decree.

■ Martin's major concern is that the award forces him to make payments from his IPERS' money before it will be available to him. We have long recognized that retirement benefits are properly considered in formulating an equitable division in a dissolution decree. *See generally In re Marriage of Voss*, 396 N.W.2d 801, 803 (Iowa App.1986). Martin does not appear

to disagree that the benefits should be divided. His concern is that the manner of division is not equitable. He points out that because the benefits are not available to him until retirement, it is inequitable to award interest on the award from the time of decree.

■ Barbara does not challenge the valuation placed on the IPERS account. We therefore accept the figure the parties have used. We recognize, however, because an IPERS account may provide lifetime benefits that actual valuation at the time of a dissolution would require an actuary. *See* Comment, *Distributions of Pension Benefits in Marital Dissolutions,* 24 Santa Clara L.Rev. 999, 1001 (1984). We recognize also that there is considerable support for apportioning future benefits when and if paid. *See Janssen v. Janssen,* 331 N.W.2d 752, 756 (Minn.1983). Such a division is not only fairer to the person receiving the pension, but it also assures the other spouse there will be certain pension rights intact for him or her when he or she reaches retirement age. We cannot, under this record, however, determine the allocation of the assets was inequitable to Martin. In making this determination, we consider, as we did earlier, the fact that his social security contributions exceed Barbara's. *See In re Marriage of Woodward,* 426 N.W.2d 668, 671 (Iowa App.1988).

Martin also contends the trial court did not properly consider his net monthly income in applying the child support guidelines. Martin filed a request under Iowa R.Civ.P. 179(b) asking the trial court to enlarge its findings on how child support had been determined. The motion was denied.

Martin contends the determination made was not correct because in making the determination the trial court neglected to consider (1) contributions he is making to the parties' college-age daughter, (2) his actual tax liability after the dissolution, (3) the consequences of the ordered rehabilitative alimony, (4) the considerable time he spends with the children, and (5) the expenses he has voluntarily assumed for their support.

The child support guidelines were adopted to, among other things, assure uniformity in child support orders. *See In re Marriage of Lowry,* 452 N.W.2d 464, 466 (Iowa App.1989); *see also* Iowa Code § 598.21(4) (1991). The use of guidelines based on a mathematical formula is intended to remedy the inadequate, inconsistent, and ineffective methods of fixing child support that result from a case by case approach. *See In re Marriage of Powell,* 474 N.W.2d 531, 533 (Iowa 1991).

■ The guideline charts are designed to determine the amount of child support based upon the number of children and the current net monthly income of the custodial and noncustodial parent. *In re Marriage of Lalone,* 469 N.W.2d 695, 696 (Iowa 1991). Prior to the 1989 guidelines, the court was required to consider statutory factors when fixing child support. *Id.;* Iowa Code § 598.21(4), (8) (1987). With the adoption of guidelines, the court is no longer required to consider the statutory factors. *Lalone,* at 697; 1989 Iowa Acts ch. 166, § 6; 1990 Acts ch. 1224, § 45. However, the factors may be considered when the guidelines require judicial discretion or if the guidelines award would be unjustified or inappropriate. *Lalone,* at 697.

■ The first step in using the child support guidelines is to arrive at what the guidelines refer to as "net monthly income." The guidelines direct that "net monthly income" means gross monthly income less deductions for:

(1) Federal Income Tax

(2) State Income Tax

(3) Social Security Deductions

(4) Mandatory Pension Deductions

(5) Union Dues

(6) Dependent Health Insurance Coverage

(7) Individual Health/Hospitalization Coverage or Medical Expense Deductions not to exceed $25 a month

(8) Prior Obligations of Child Support actually paid pursuant to court order

(9) Actual Child Care Expenses while custodial parent is employed

The first question is what consideration should be given to educational expenses paid for unmarried children under the age of twenty-two. Unmarried children who are full-time students and under twenty-two years of age can be entitled to support under a dissolution decree. *See Marriage of Lieberman,* 426 N.W.2d 683, 685 (Iowa App.1988); *In re Marriage of Byall,* 353 N.W.2d 103, 107 (Iowa App.1984). We have held the amount of their support is not fixed by the guidelines. *See In re Marriage of Linberg,* 462 N.W.2d 698, 701 (Iowa App.1990). This is not a case, however, where Martin has been ordered to pay a monthly sum for his unmarried nineteen-year-old college-age daughter. Absent such an order, he is under no legal obligation to do so. *See Byall,* 353 N.W.2d at 107. Martin has also not shown the voluntary contribution he is making is a contribution to his daughter's education expenses. In fact, the evidence shows she is not currently in college. The question is whether the failure to consider these contributions would be substantially unfair to Martin. *See generally In re Marriage of Lalone,* 469 N.W.2d 695, 697 (Iowa 1991). Under this record, we cannot find a substantial injustice to Martin in the trial court's failure to consider payments he made to his college-age daughter. See *Lalone* at 697.

Martin's second complaint is the trial court did not properly compute his income tax deduction. The income tax figure used by the trial court assumed Martin could claim four dependents. Martin was not given the dependency deductions for either of the children in the decree.

The child support guidelines define "net monthly income" as being a figure arrived at after deducting, among other things, federal and state income tax. The guidelines give us no guidance on what income tax figures should be used.

■ We recognize the allocation of dependency exemptions can substantially change ultimate income tax liability. We also recognize payroll deductions for income tax may not accurately reflect ultimate income tax liability. The trial court and this court are without readily available tools to make accurate computations of ultimate income tax liability. We recognize to achieve the fairness and uniformity contemplated by the guidelines, income tax deducted should be a figure that reflects actual ultimate income tax liability. The obligation for providing income tax information therefore falls to the parties and their attorneys.

■ The income tax figures the trial court used in arriving at Martin's net monthly income were based on Martin being allowed to claim the children as exemptions on his federal and state tax returns. The trial court did not, however, allocate these exemptions to him. The tax exemptions for the two children in Barbara's care should be allocated to Martin. Martin is paying substantial support. At Barbara's income level, the exemptions are of minimal value to her. We modify the decree to give Martin the federal and state tax exemptions for the two younger children. We also direct Barbara shall, on or before February 15 of each year, furnish Martin with the forms necessary for him to claim the deduction on both his federal and state income tax returns for the children for the preceding calendar year. Having made this adjustment, we consider the support fixed by the trial court to be fair under the circumstances.

■ Martin's next contention is that the rehabilitative alimony he was ordered to pay Barbara should have been considered income to Barbara and should have been deducted from his income in applying the child support guidelines. The child support guidelines provide a noncustodial parent's income may be reduced for *"[p]rior* obligation[s] of child support and spouse support actually paid pursuant to court or administrative order," Child Support Guideline (9) (emphasis added). They do not provide for deduction of alimony under the present decree. *Id.; Lalone,* at 697. In *Lalone,* the district court noted the alimony it ordered would affect the disposable income of both parents. The trial court found it would result in substantial injustice to the husband if he were required to

make large alimony payments and the effect of those payments was ignored in computing his child support obligation.

The supreme court affirmed the district court and said:

> Our guidelines give discretion to the district court in setting child support to adjust the amounts provided by the guidelines "upward or downward ... if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case."

The present case is distinguished from *Lalone,* 469 N.W.2d at 695. The alimony in this case is of a lesser amount payable for a shorter duration. The trial court did not find a failure to consider the alimony in computing the child support would result in a substantial injustice to Martin. The trial court's findings were within its discretion.

Martin's last contention is the trial court did not properly consider the time Martin spends with the children, and the voluntary contributions he makes to the children in fixing the child support. The trial court did not consider these factors. The trial court was within its discretion.

Costs on appeal are taxed one-half to each party. Each party shall pay his or her own attorney fees.

We affirm as modified.

AFFIRMED AS MODIFIED.