In re the **MARRIAGE OF Susan G. MCKAMEY and Dennis J. McKamey.**

Upon the Petition of **Susan G. McKamey, Petitioner–Appellee,**

And Concerning **Dennis J. McKamey, Respondent–Appellant.**

No. 92–1795.

Court of Appeals of Iowa.

June 28, 1994.

Stephen P. Wing of Dwyer, Wing, Zamora, Taylor & Walters, Davenport, for appellant.

Arthur L. Buzzell, Davenport, for appellee.

Considered by HAYDEN, P.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

Respondent-appellant Dennis J. McKamey appeals from a decree dissolving his marriage. He contends the property division is not equitable and he was ordered to pay more child support than was contemplated by the child support guidelines. We affirm.

Dennis and petitioner-appellee Susan G. McKamey were married in 1974. At the time of trial, the parties were both thirty-seven years old and had two children, Stacy, born in 1976, and Brett, born in 1978. Susan works at the community hospital and earns minimum wage for thirty-six hours a week. The hospital, in addition to her salary, pays her health insurance. Dennis is a sole proprietor of a muffler and oil change shop. The trial court valued the assets and liabilities and apportioned them between the parties. Based on the trial court's values, Susan received net equities of $34,000 and Dennis received net equities of $52,000. Dennis was ordered to pay Susan $8000 to equalize the property division and alimony of $30 a week for four years.

 Dennis contends, in apportioning the assets and in fixing his income, the trial court did not do equity. Our review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however. *Id.* We base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

 Dennis bought the shop in 1985 with the help of a loan from his mother of $55,000. The business is located in a building owned by the parties and subject to a debt to Dennis's mother of about $25,000 and a debt to a bank of about $56,000. Dennis valued his business equipment and inventory at about $17,000. He claimed his accounts receivable were $7200 but not all collectable, and James's accountant testified they should be discounted about ten percent. His balance sheet shows an owner's equity of $21,000. His tax returns show business earnings for the prior three years of an average of $15,-500. Susan testified cash was taken from the business that was not reported.

The trial court found Dennis's financial statement not credible and valued the business at $35,000. Dennis contends there was not evidence supporting that value but the only value that should be placed on the business is $24,440.

We find the value placed on the assets by the trial court to be well within the permissible range of evidence and will not disturb them on appeal. *See In re Marriage of Bare,* 203 N.W.2d 551, 554 (Iowa 1973); *In re Marriage of Griffin,* 356 N.W.2d 606, 608 (Iowa App.1984).

Dennis next contends the child support ordered was excessive. Dennis reported an average three-year profit from his business of about $15,000; however, the trial court did not find this figure accurately represented the income Dennis had available for child support purposes. The trial court specifically found Dennis pays personal expenses, including transportation and living expenses, and deducts these expenses as business expenses and also Dennis supplements his household income by paying wages of $10,000 a year which he also deducts. These wages were first paid to his wife and now are paid to his girlfriend. The trial court, therefore, found Dennis's income was $30,000 a year or, at least, he had the ability to generate income of $30,000 a year. Dennis argues the trial court did not give him proper credit for depreciation in arriving at this figure.

The child support guidelines are applicable. *See In re Marriage of Powell,* 474 N.W.2d 531, 533 (Iowa 1991) (under child support guidelines, there is rebuttable presumption that amount of child support that

would result from application of guidelines is correct); *In re Marriage of Ludwig,* 478 N.W.2d 416, 419 (Iowa App.1991) (application of child support guidelines is mandatory unless court makes written findings that adjustment is necessary); *Iowa Dep't of Human Servs. ex rel. Gonzales v. Gable,* 474 N.W.2d 581, 582 (Iowa App.1991) (child support guidelines are to be used in determining child support unless court makes written finding that adjustment is necessary); *In re Marriage of Toedter,* 473 N.W.2d 233, 235 (Iowa App.1991) (trial court was required to apply child support guidelines in effect at time of dissolution where trial court had made no written findings that they would be unjust or inappropriate); *In re Marriage of Rodgers,* 470 N.W.2d 43, 45 (Iowa App.1991) (level of child support should have been set in accordance with guidelines, absent any indication that guidelines were inappropriate or unjust).

■ Before applying the guidelines there needs to be a determination of the net monthly income of the custodial and non-custodial parent. *See Powell,* 474 N.W.2d at 533 (court must determine the parents' current income from most reliable evidence presented); *In re Marriage of Lalone,* 469 N.W.2d 695, 696 (Iowa 1991) (application of child support guideline chart first involves determination of net monthly income of each parent); *In re Marriage of Miller,* 475 N.W.2d 675, 678 (Iowa App.1991) (first step in using the child support guidelines is to arrive at "net monthly income").

This is one of a series of cases that have come before the Iowa appellate courts seeking further definition of "net monthly income" as used in the guidelines. *See In re Marriage of Gaer,* 476 N.W.2d 324, 326–30 (Iowa 1991) (in determining income available for child support, self-employed truck driver would be allowed deduction for straight line method of depreciation of truck); *Powell,* 474 N.W.2d at 533–34 (court may determine current monthly income based upon income prior to temporary unemployment); *Lalone,* 469 N.W.2d at 697 ("net monthly income" excluded alimony paid); *State ex rel. Dep't Human Serv. v. Burt,* 469 N.W.2d 669, 671 (Iowa 1991) (amount father ordered to pay to be applied toward his accrued obligation for

public assistance advanced in past is not deductible from gross income in determining net income under child support guidelines); *In re Marriage of Mayfield,* 477 N.W.2d 859, 861–62 (Iowa App.1991) ("net income" was properly found to equal average of last two years of taxable income); *Miller,* 475 N.W.2d at 678–79 ("net monthly income" did not exclude alimony paid); *In re Marriage of Jennings,* 455 N.W.2d 284, 287–88 (Iowa App.1990) (net monthly income under the guidelines means gross monthly income less specifically enumerated deductions).

The definition of income as used in the guidelines is most readily adaptable to the parent employed at a set monthly wage. We agree with Dennis, the definition of income in the guidelines is not easily applied to the earnings of self-employed persons who experience month-to-month and/or year-to-year fluctuations in income. The translation of the income of a self-employed person or an employed person who has varying wages to a monthly "net income" is difficult. However, the difficulty in making the computation is not sufficient justification for not making the computation.

■ Generally in fixing child support, we consider as gross income what is referred to as "total taxable" income on the Federal 1040 and as "net income" on the IA 1040. *See In re Marriage of Cossel,* 487 N.W.2d 679, 683 (Iowa App.1992). Dennis's business showed it made about $15,000 in 1990 and about $18,000 in 1991.

■ The trial court did not use income figures as reported on Dennis's tax returns; rather, the trial court made some other computations. The trial court attributed a large portion of the salary of Dennis's live-in girlfriend to Dennis. Where a man or woman is obligated to pay child support or alimony and he or she is the principal in a business that employs his or her live-in boyfriend or girlfriend, we will look to the salary paid to his or her live-in friend to determine whether the allocation is fair or if it results in a salary to the live-in companion that is larger than average salaries for comparable employment. If the salary is in excess of salaries for comparable employment, then we will as-

sume the portion of the salary that is in excess of comparable salaries is being paid in an attempt to show a reduced level of income for the obligor. Absence evidence showing a valid basis for the excess salary, we will attribute that portion of the salary that is excessive to the obligor spouse. *In re Marriage of Aronow*, 480 N.W.2d 87, 89–90 (Iowa App.1991) (where the salary paid by child support obligor to new spouse was assessed under the same criteria). *See generally In re Marriage of Mueller*, 400 N.W.2d 86, 88 (Iowa App.1986) (where after making such an assessment, we determined the salary paid to the spouse was fair).

 We agree with the trial court's finding; part of the salary paid Dennis's live-in girlfriend should be apportioned to him.

Dennis also contends the trial court improperly discounted his depreciation deductions. Depreciation is a valid cost of doing business. As a self-employed business owner, Dennis needs supplies and equipment to run his business. Depreciation deductions for business real estate and equipment reflect a decrease in value of those items and have been established by Internal Revenue and Congress to reflect the cost of doing business. In *Gaer*, 476 N.W.2d at 326–29, the Iowa Supreme Court addressed at length the issue of the treatment of depreciation in fixing child support. What we gain from *Gaer* is that a non-custodial parent electing to expense certain depreciable assets should have that amount of expenses allocated over a reasonable depreciation period. *See Gaer*, 476 N.W.2d at 329 (self-employed truck driver allowed straight line depreciation of truck); *see also Cossel*, 487 N.W.2d at 682–83. Our review shows us the trial court did not discount Dennis's deduction for depreciation but, rather, increased his income by the amounts the trial court determined were taken from the business for personal use but claimed as expenses on Dennis's tax returns. We affirm the trial court on this issue.

The next question is whether the trial court should have deducted the alimony Dennis was ordered by the decree to pay to Susan from Dennis's income and added it to Susan's income. The child support guidelines do not specifically provide for deduction of alimony paid under the present decree. *See Lalone*, 469 N.W.2d at 697; *Miller*, 475 N.W.2d at 679. However; the guidelines give discretion to the district court in setting child support to adjust amounts provided by the guidelines if the court finds the adjustment necessary to provide for the needs of the child and to do justice between the parties under the special circumstances of the case. *Lalone*, 469 N.W.2d at 697; *Miller*, 475 N.W.2d at 680. In *Lalone*, the court found the trial court did not abuse its discretion in deducting the alimony to be paid by the husband under the current decree before fixing child support where it noted the alimony ordered would affect the disposable income of both parents and it would result in an injustice to the husband if he were required to pay substantial alimony and have it ignored in computing his child support obligation. *Lalone*, 469 N.W.2d at 697. In *Lalone*, the ordered alimony was substantial and for a long term. In *Miller*, 475 N.W.2d at 680, we found the trial court did not abuse its discretion in failing to consider alimony in computing child support. The alimony to be paid here is short in duration, and we do not find a abuse of discretion by the trial court on this issue. *See id.*

Susan has requested attorney fees on appeal. We award her $200.

**AFFIRMED.**