**In re the MARRIAGE OF Beatrice Ann KNIGHT and Roger Allen Knight,**

**Upon the Petition of Beatrice Ann Knight, Appellant,**

**And Concerning Roger Allen Knight, Appellee.**

No. 93–55.

Court of Appeals of Iowa.

Sept. 2, 1993.

Daniel Shinkle of Legal Services Corp. of Iowa, Iowa City, for appellant.

M. Rebecca Seidl of Barker, Cruise, Kennedy, Houghton & Foster, Iowa City, for appellee.

Considered by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Roger and Beatrice Knight were married on May 29, 1982. Three children were born of the marriage: Roger Jr., born March 13, 1985; Abigail, born May 10, 1988; and Phillip, born December 7, 1990.

Beatrice filed a petition for dissolution on December 10, 1991. At the time of trial, Roger was employed as a firefighter with the Iowa City fire department, and also served as a volunteer firefighter for the Coralville fire department. Roger earns a net income of $1695.76 per month. Beatrice was disabled and unemployed at the time of trial due to a bad back. Beatrice receives social security disability benefits in the amount of $593 per month, SSDI benefits of $296 per month, and Principal Financial disability insurance in the amount of $143.24 per month, for a total income of $1032.24 per month.

The parties jointly owned a home in Iowa City valued at $80,000, with an encumbrance of $56,956.45, for a net value of $23,043.55. They also jointly owned a mobile home in Coralville valued at $3000. The mobile home is currently rented at $330 per month. Roger and Beatrice also owned a 1988 Dodge Caravan, worth $9000, with an encumbrance of $5035.77. Roger owned an unencumbered 1975 Chevrolet truck worth $1000 and 1981 Citation worth $100. Beatrice is the owner of a TIAA retirement account worth $16,000 which grows at a rate of $1000 per quarter. Roger's retirement account is worth $5000, and he has another account worth $3500. The parties also have numerous credit card debts and a $2000 outstanding loan to Delbert Knight.

The district court granted temporary custody of the three minor children to Beatrice. During the pendency of the divorce, there were numerous difficulties between the parties regarding Roger's rights to visitation. On August 31, 1992, Beatrice petitioned for an injunction against Roger. While no injunction was issued, the parties entered into an agreement Roger would stay away from the home except for times of visitation.

The district court awarded physical custody of the three minor children to Roger. The court believed Roger was "more likely to foster smoother visitation and other contacts if he has primary care." The court ordered Beatrice to pay $361 per month in child support and ordered Roger to maintain medical insurance on the children. The court ordered Roger to pay nominal alimony in the amount of $1 per year. Beatrice was awarded the income tax deduction for Roger Jr., and Roger was awarded the tax deduction for the other two children. The district court also ordered the marital home be sold and the net proceeds divided equally. Roger was awarded the mobile home. The court awarded each party his or her respective TIAA retirement accounts and personal

checking and savings accounts. Beatrice was awarded the 1988 Dodge Caravan, and Roger was awarded the 1975 truck and 1981 Citation.

The court divided equally the parties' credit card debts between Beatrice and Roger. Beatrice was responsible for the $500 debt to Sears for new tires for the Caravan. The court awarded Roger the 1990 income tax refund but ordered him to pay a portion of the refund for the payment of debts. Beatrice has appealed, contesting the custodial and economic provisions of the dissolution decree. Roger has cross appealed.

Beatrice seeks custody of the children, maintaining Roger has physically abused the children in the past and threatened her with physical abuse. She maintains she was the primary caretaker of the children. Beatrice points out a court-ordered psychological profile of Roger indicated a degree of rigidity and inflexibility in his manner of disciplining children. Beatrice argues Roger is incapable of providing patience and understanding to Roger Jr., who suffers from an attention deficit disorder. Beatrice contends it is not in the children's best interest Roger rely on his twenty-four-year-old niece to care for the children while he is at work. Beatrice also contests the alimony award and property distribution set forth by the district court.

Our review of this equity proceeding is de novo. Iowa R.App.P. 4. Although we are not bound by the findings of the district court, we give them weight, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7).

**I. Custody.** In cases involving a custody dispute our first and governing consideration is the best interests of the children. *In re Marriage of Lacaeyse,* 461 N.W.2d 475, 476–77 (Iowa App.1990). In determining the best interests of the children we consider which parent will do better in raising the children; gender is irrelevant. *In re Marriage of Rodgers,* 470 N.W.2d 43, 44 (Iowa App.1991). The objective in resolving a custody dispute is to place the children in the environment most likely to bring them to healthy, physical, mental, and social maturity. *Id.* at 45 (citation omitted).

Beatrice contends the district court should have awarded custody of the children to her. Evidence shows Beatrice was the primary caretaker of the children during the parties' marriage. The fact a parent was the primary caretaker prior to the parents' separation does not assure he or she will be awarded custody of the children in a dissolution action. *In re Marriage of Fennell,* 485 N.W.2d 863, 865 (Iowa App.1992) (citation omitted). However, consideration is given in a custody dispute allowing the children to remain with a parent who has been a primary caretaker so as to enable the children to have continuity in their lives. *Id.* (citations omitted). The results of a court-ordered psychological examination concluded Beatrice has the necessary parenting skills to provide for the needs of her children. This conclusion is important, especially in light of Roger Jr.'s special needs. Roger Jr. suffers from attention deficit disorder with hyperactivity. Beatrice also has a more flexible schedule. *See In re Marriage of Will,* 489 N.W.2d 394, 399 (Iowa 1992). We determine Beatrice can better minister to the needs of the children.

We are concerned about Roger's violent tendencies because they expose the children to danger. *See In re Marriage of Burwinkel,* 426 N.W.2d 664, 665 (Iowa App.1988). At trial Roger admitted he had difficulty disciplining Roger Jr. and hit him on occasion before the parties' separation. He explained his actions were due, in part, to the child's hyperactive behavior. Roger stated the medication, which Roger Jr. began taking just prior to the separation, has caused those problems to subside. Roger's testimony indicates, however, some tension builds up when he has the children for two or more days consecutively. Roger stated his son's behavior begins to escalate over this period of time because he does not receive his medication during visits. Tami Miller, Roger's niece with whom he has resided since the separation, testified she has seen Roger "swat Roger [Jr.] on the behind ... to get him to calm down...."

Roger's ability to serve as a good role model is also questionable. *See In re Marriage of O'Brien,* 491 N.W.2d 202, 205 (Iowa

App.1992). Both parents stated Roger Jr. tends to throw things when he is upset. Roger admitted his son could have possibly learned such behavior from him. At trial Roger was questioned about an incident in which he locked himself in the parties' bedroom following an argument with Beatrice. Roger admitted the incident occurred during which he locked himself in the bedroom, went in and out of the bedroom window, disabled the parties' vehicle so Beatrice was unable to leave, and threw an object at Beatrice. The children were present in the home during this incident.

In custody determinations we are also mindful the court must consider the denial of one parent of the child's opportunity to have meaningful contact with the other parent is a significant factor in determining the custody arrangement. *In re Marriage of Will*, 489 N.W.2d 394, 399 (Iowa 1992); Iowa Code § 598.41(1) (1993). The trial court based its custody award on a finding Roger would "more likely foster smooth visitation and other contacts if he has primary care." The trial court did not address the fact Roger admitted he had hit Roger Jr. The evidence shows both parents have impeded the other's relationship with their children. We admonish both parents for their actions and urge them to cooperate with each other, especially regarding issues involving their children.

Upon the whole record, with deference to the position of the trial judge to assess the demeanor and credibility of the witnesses, we are nevertheless convinced the children's long-range best interests would be better served in the custody of Beatrice rather than Roger. *See In re Marriage of Snyder*, 241 N.W.2d 733, 734 (Iowa 1976). We reverse the decision of the district court on the issue of custody and child support. We remand the issues of child support, visitation, and income tax exemptions to the district court to determine Roger's support obligation to Beatrice, establish a liberal visitation schedule, and adjust the tax exemptions accordingly.

■ **II. *Injunction.*** Beatrice contends the district court should have ordered an injunction barring Roger from harassing her in public. The grant or denial of injunctive relief is largely within the sound discretion of the trial court under the facts of the particular case. *Braverman v. Eicher*, 238 N.W.2d 331, 335 (Iowa 1976) (citations omitted).

> It is elementary that a court of equity will not resort to the granting of injunctive relief unless it appears there is an invasion or threatened invasion of a right, and that substantial injury will result to the party whose rights are so invaded, or such injury is reasonably to be apprehended. An injunction is an extraordinary remedy and must not be granted when an ordinary remedy will do.

*Hughes A. Bagley, Inc. v. Bagley*, 463 N.W.2d 423, 425 (Iowa App.1990). Following the application for an injunction, the parties entered into a stipulation in which Roger agreed to stay away from the home and Beatrice except for periods of visitation. Under the facts of this case such a remedy is sufficient.

We affirm the district court's denial of Beatrice's request for injunctive relief.

**III. *Alimony.*** Beatrice argues she is entitled to alimony in the amount of $190 per month. The district court awarded Beatrice $1 per year in alimony.

■ Alimony is not an absolute right; an award depends upon the facts and circumstances of each particular case, including the property division. *In re Marriage of Brown*, 487 N.W.2d 331, 334 (Iowa 1992); *In re Marriage of Bevers*, 326 N.W.2d 896, 900 (Iowa 1982) (citation omitted). When determining the appropriateness of alimony, the court must consider the factors listed in Iowa Code section 598.21(2) (1993). We find no reason to disturb the alimony award set by the trial court. We affirm on this issue.

■ **IV. *Property Distribution.*** Beatrice argues the method used by the district court to divide the marital property was unfair. The district court ordered the remaining marital property, to which ownership was disputed by the parties, be placed on a list. Beatrice was afforded the opportunity to choose one item from the list, then Roger was to pick one item, alternating between the parties. Beatrice has failed to show this

property distribution was inequitable to her. We conclude the manner in which the district court divided the parties' remaining marital property was fair and equitable under the circumstances of this case.

■ In addition, Beatrice contends the trial court failed to provide an equitable division of the parties' marital debts. Specifically, Beatrice argues she should not be held responsible for one-half of the debt for counseling. The parties participated in court-ordered marital counseling. In addition Robert participated in individual counseling sessions to address his actions toward Roger Jr. Beatrice requests the portion of the counseling costs attributed to Roger's individual counseling should be assigned to him. We determine the property distribution regarding the parties' marital debts was reasonable and fair. We affirm the decision of the district court on these issues regarding the property distribution.

**V. Cross Appeal.** Roger raises two issues in his cross appeal: (1) the court should not have suspended Beatrice's child support obligation during her periods of summer visitation, and (2) the court should have awarded the children's personal property to him because he was awarded custody. In light of our decision regarding the custody of the children, we do not need to address these issues.

Costs of this appeal are assessed one-half to Roger and one-half to Beatrice.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

DONIELSON, P.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part.

I would affirm the trial court in all respects.

The trial court found Roger to be more likely than Beatrice to foster the children's development and to foster contact with the party not having primary care. My de novo review of the record causes me to agree with the trial court assessment.

Roger, a fire fighter, works a twenty-four hour shift on a nine-day cycle, being at the fire station on day one, three, and five. Consequently, he spent considerable time with his children. He assumed a large portion of their care. I would characterize him as one of their two primary caretakers.

The parties separated after the confrontation the majority has outlined in its opinion. No one was injured in the confrontation and I am unable to determine from the record what was even thrown. There was no physical injury to anyone.

Beatrice wanted supervised visitation and wants the police to supervise transfer of custody even though there had been no problem. She failed to comply with a counselor's recommendation for unsupervised visitation. She changed her phone number and refused to let Roger call the children. She has been very uncooperative during visitations and does not send required equipment and medication with the children. She suffers from histrionic personality disorder and tends to present herself as a helpless victim.

Beatrice uses the children to communicate her frustrations with their father. She purchased a Doberman to protect herself and the children from the father. Beatrice is attached to the children. She has no circle of friends.

There is evidence Beatrice keeps the children inside and they are very limited in opportunities to interact with other children. The children do not socialize with neighborhood children. Beatrice has threatened Roger's family if they try and see the children. Her own family has had very limited contact with the children.

Roger is more involved with the community and has made arrangements to more adequately meet the children's needs.

At Beatrice's insistence, the parties had psychological evaluations at the University of Iowa. Notes on Beatrice's testing are:

> She cried during sessions, was uncooperative, displayed manipulative behavior during the evaluation. Her test responses

suggest an emotionally liable person who uses emotional reactions to get her way and avoid unpleasant tasks. She was also found to have low average intelligence and is not very insightful.

Notes on Roger included:

He does not want divorce, has average intelligence, was cooperative with examiner, and displayed rational, concrete thinking. He was also found to have poor communication skills.

The trial court should be affirmed.